STATE, RESPONDENT, *v.* YEGEN, APPELLANT.

(No. 5,710.)

(Submitted June 20, 1925. Decided July 18, 1925.)

[238 Pac. 603.]

*Criminal Law—Banks and Banking—Receiving Deposits when Bank Insolvent — Partnership — Evidence — "Public Writings"—What are not—Punishment—Statutes—Instructions —Appeal.*

Criminal Law—Banks and Banking.—Receiving Deposits When Bank Insolvent—Evidence—"Public Writings"—What are not.
1. *Held*, in a prosecution against the owner of a private bank for receiving deposits at a time when the bank was insolvent, that reports made to the state bank examiner by his deputies as to its financial conditions, not verified or signed, were not admissible in evidence as "public writings" in the absence of proof of their contents; they were further inadmissible as confidential in character, under section 6098, Revised Codes of 1921.

Same—"Public Writings"—What Does not Constitute.
2. A public officer cannot, by incorporating in a report something the law does not require to be incorporated therein, make the writing admissible in evidence as a public writing.

Same—Book Entries—When Admissible in Evidence.
3. Before book entries are admissible in evidence, it must be shown that the books were kept in the usual course of business, honestly and correctly, and that the entries were made contemporaneously with the transactions to which they relate.

Same—Partnership not a Legal Entity—Erroneous Instruction.
4. A partnership is not a legal entity and has no existence independently of the partners; hence an instruction in a prosecution against one of two partners engaged in banking for receiving deposits when the bank was insolvent that if at the time the defendant received the deposits "the partnership" was insolvent and the jury so found, they should find him guilty, was error; the instruction should have referred to the insolvency of the partners instead of the partnership.

Same—Punishment—Statute Applicable.
5. The punishment for receiving deposits in an unincorporated bank when insolvent provided by section 6107, Revised Codes, as amended by section 12075 (the Indeterminate Sentence Act), is imprisonment for not less than six months and no more than five years; section 6081, as amended by Chapter 90, Laws of 1923, providing otherwise, having reference to incorporated banks.

3. See 10 R. C. L. 1179.

[74 Mont. 126.]

Appeal—Instructions—When Appellant cannot Complain of Instruction Given.
6. In the absence of a request for a more specific instruction than that given by the court, appellant cannot complain of the one given as not sufficiently specific.

---

Banks and Banking, 7 C. J., sec. 210, p. 585, n. 84; sec. 212, p. 585, n. 87 New.
Criminal Law, 16 C. J., sec. 1519, p. 739, n. 84; sec. 1520, p. 739, n. 86; sec. 2501, p. 1059, n. 42.
Evidence, 22 C. J., sec. 1040, p. 867, n. 95; sec. 1042, p. 868, n. 10; sec. 1069, p. 881, n. 47.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

CHRISTIAN YEGEN was convicted of receiving a deposit when his bank was insolvent, and he appeals. Reversed and remanded.

*Messrs. Canning & Geagan,* for Appellant, submitted a brief; *Mr. P. E. Geagan* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By an information filed in the district court of Silver Bow county, Christian Yegen, Peter Yegen and Barton B. Dakin were charged with the commission of a felony—receiving into the bank of Yegen Brothers, bankers, at Butte, a deposit of $190 at a time when the bank and the partners doing business as Yegen Brothers were insolvent. Christian Yegen was tried separately, and was convicted and sentenced to imprisonment in the penitentiary for not less than two years nor more than four years. He has appealed and predicates his right to a reversal of the judgment and order denying him a new trial upon thirty assigned errors. The assignments which require special consideration may be grouped

conveniently under five heads. Christian Yegen will be referred to as defendant.

1. The state charged and undertook to prove that the [1] bank conducted at Butte, under the designation, "Yegen Brothers, Bankers," was an unincorporated, private bank, owned and controlled by Christian Yegen and Peter Yegen, partners who did business under the name of Yegen Brothers; · that Barton B. Dakin was the agent of the partners and the cashier and manager of the Butte bank; that on February 14, 1924, the partners and Dakin received into the bank for deposit $190, the property of Mrs. F. E. Renick, and that the bank and the partners were then insolvent.

The principal burden imposed upon the state was to prove the insolvency of the partners at the time the deposit was received, and a very material portion of the evidence offered to establish the fact of such insolvency, is contained in three exhibits (16, 17 and 18), which fill more than 400 pages of the record before us.

Exhibit 16 is entitled: "Examiner's report of condition of Yegen Brothers, Bankers, Butte, Montana, at the close of business on February 14, 1924, date of closing." This report was prepared by C. M. McCoy.

Exhibit 17 is entitled: "Yegen Bros., Bankers, Billings, Montana." It purports to be a report upon the financial condition of Yegen Brothers, Bankers, Billings, Montana, at the close of business February 15, 1924, and was prepared by A. L. Ritt.

Exhibit 18 is entitled: "Examiner's report of the condition of Yegen Brothers, Bankers, Gardiner, Montana, closed February 15, 1924, and taken in charge by the state banking department at 10:40 A. M. February 16, 1924." This report was prepared by F. W. Bleck. McCoy, Ritt and Bleck were deputies in the office of L. Q. Skelton, state examiner.

Mr. Skelton testified that he sent McCoy to Butte, Ritt to Billings, and Bleck to Gardiner, to examine the respective

banks; that he received these reports in the usual course of business and transmitted them to the governor. He explained the method of conducting the business of his office and the usual procedure followed in making bank examinations.

John Allen, the secretary to the governor, produced the reports and testified that they were received from the state examiner, were filed, and were then deposited in a vault in the governor's office. Neither McCoy, Ritt nor Bleck was called as a witness, and no one of the reports was verified or even signed. Upon this showing alone the reports were admitted in evidence over the objections of defendant, and the court then instructed the jury in the language of section 10570, Revised Codes, that "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or any other person in the performance of a duty specially enjoined by law, are *prima facie* evidence of the facts stated therein." Since there were not any other documents introduced to which this instruction could be applicable, it is apparent that the trial court proceeded upon the theory that these reports are public writings and therefore they were admissible and prove their contents. Counsel for defendant challenge the correctness of the trial court's conclusion that the reports are public writings.

Section 10540, Revised Codes, declares: "Public writings are: 1. The written acts or records of the acts of the sovereign authority, of official bodies and tribunals, and of public officers, legislative, judicial, and executive, whether of this state, of the United States, of a sister state, or of a foreign county. 2. Public records, kept in this state, of private writings."

Section 10541 provides: "All other writings are private."

Section 10544 provides: "Public writings are divided into four classes: 1. Laws. 2. Judicial records. 3. Other official

documents. 4. Public records, kept in this state, of private writings."

These reports are not laws, judicial records, or public records kept in this state of private writings, and, if admissible in evidence as public writings, it is because they are included in class 3—"other official documents."

The evidence contained in the reports is hearsay within every recognized definition of that term. Neither Mr. Skelton, who identified the reports, nor Mr. Allen, who produced them, nor any other witness for the state, assumed to know anything concerning the accuracy of the statements which appear in them. The probative force of the statements depends altogether upon the competency and credibility of the deputies who prepared the reports.

It is the general rule that hearsay is not admissible, but there are some exceptions to the rule, as well established as the rule itself, and one of these exceptions is that relevant official statements are admissible without confirmation of their authenticity by the usual tests for determining the truth, *viz.,* the examination and cross-examination of the persons by whom the statements are made. Included in the official statements comprehended by the exception are all of the public writings enumerated in class 3, section 10544 above, except such confidential communications as are excluded by subdivision 5, section 10536, Revised Codes, upon the ground of public policy.

It follows then that, if these reports are public writings within the meaning of the statute and are not excluded as confidential communications, they were admitted properly under the provisions of subdivision 6 of section 10568, and, on the contrary, if they are not public writings they fall within the general rule which excludes hearsay. Whether they are public writings must depend upon the character of the reports and the terms of the statute under which they were prepared.

Each of the exhibits in question purports to contain an itemized statement of the resources and liabilities of the bank to which it refers. The principal items which constitute the resources of each bank are loans, bonds, stocks and warrants, banking house furniture and fixtures, other real estate, cash on hand, and amounts due from other banks. In each report the loans are classified as "good," "doubtful," or "loss," a valuation is placed upon each item constituting the resources, and each report contains comments made and opinions expressed by the deputy who prepared it. Examples from the report will serve to illustrate the character of evidence under review. Out of consideration for the borrowers whose notes are classified as worthless, we omit the names, and refer to the loans by the numbers employed in the reports:

| Name of Borrower. | Amount Loaned. | Good. | Doubtful. | Loss. |
|---|---|---|---|---|
| (1) ............................ C/M 419c: 110h: 4867 sheep. Wool sold, payment not yet received, approximately $12,000. No statement. | 123,670 | 85,080 | 12,000 | 26,590 |
| (15) ............................ Unsecured. Works for Ryan Fruit Co. ............................ | 200 | | | 200 |
| (23) ............................ Unsecured. Attorney. | 100 | | | 100 |
| (4) ............................ Unsecured. Maker gone. Bank holds collateral note of about 1,400 which is held by Bank of Boulder for collection and signed by Clark. Have no other information. | 579.46 | | | 579.46 |
| (19) ............................ Unsecured. Loans made by former cashier W. L. Kearns who is now working for the Glengary Mining Co. Loans due in Dec. 1921. Mine not working. Is located at Cooke City. Are now putting mine in shape to start operating in the spring. Not sufficient information on hand. Looks like a very bad deal. | 16,756.31 | | | 16,756.31 |
| (23) ............................ Unsecured. Works for government at Mamouth. Has good reputation. Considered good. | 300.00 | | 300.00 | |

Concerning the furniture and fixtures of the Butte bank, the report (Exhibit 16) says: "Carried on books at $21,374. The bank was refurnished about one year ago. The railings are of mahogany vanier [veneer] with marble bases. Copper grilling. Vaults and equipment with the usual machines, desks, *etc.* Appear to be carried at a fair value, but, realizing the difficulty of disposing of part of this class of equipment, it would seem fair to reduce this figure to $15,000. Loss $6,374."

By this process it was made to appear that the Butte bank had suffered losses aggregating $198,092.44, the Billings bank $146,423.45, and the Gardiner bank $30,156.52; that the doubtful loans in the Butte bank amount to $100,185.40, in the Billings bank to $55,428.39, and in the Gardiner bank to $28,098.97; and that the capital investment of each bank had been wiped out completely by the losses.

The very character of the entries would seem to be sufficient justification for the conclusion that the reports were never intended to be classed as admissible public writings. It would be a barbarous rule which would sanction the conviction of a person by unsworn statements made out of court, consisting of adverse comments without apparent justification, and expression of opinion based upon a lack of information; but, if any doubt as to the correctness of that conclusion exists, it is removed by the terms of the statute under which the reports were prepared when considered in connection with the provisions of section 10540 above.

Section 6097, Revised Codes, authorizes the state examiner to investigate and examine the books, papers, and effects of private banks, Section 6098 then declares: "Any knowledge or information gained or discovered by the state [bank] examiner, in pursuance of his powers or duties as herein prescribed, shall be deemed confidential information of the state examiner's office only, and such information shall not,

except as hereinafter provided, be imparted to any person or persons who are not officially associated in and with the office of the state examiner, and such information shall be used by the state examiner only in the furtherance of his official duty.''

The purpose of these reports, the reason for making their contents confidential, and the exceptions mentioned, are all disclosed by the following sections:

Section 6100 provides that if, after making an examination of a private bank, the examiner finds evidence of impairment or insolvency, he shall submit a statement to the governor and attorney general, and if they are satisfied that the impairment or insolvency exists, they shall order the examiner to notify the persons conducting the bank to make good the impairment or insolvency, or they may order him to take charge of the bank.

Section 6103 provides that, if it appears (to the examiner) necessary to have a receiver appointed for such bank, the examiner shall submit to the governor a statement of the condition of the bank, and if it appears to the governor that a receiver is necessary, he shall direct the attorney general to apply to the proper court for the appointment of a receiver.

It is thus made plain that the purposes of the examination are to enable the state examiner to ascertain the financial condition of the bank examined and to provide the information which he may submit to the governor and attorney-general to enable them to determine what proceedings, if any, they shall authorize. When the reports in question were lodged with the governor, they were or were not public writings within the meaning of the statute. The fact that the information contained in them is confidential, and that it is not to be made known to anyone but the governor, attorney general and the persons connected with the state examiner's office, is all but conclusive that the legislature

did not intend that reports of this character should be treated as public writings subject to be used as evidence. It is a contradiction of terms to say that the information gained by the examination is confidential, but that, if incorporated in a written report, it may be introduced in evidence and become known to the public generally. And the reason which prompted the legislature to impress such information with the seal of secrecy must be apparent. The governor and attorney general in the one instance, or the governor alone in the other, may not agree with the state examiner that any impairment or insolvency is shown or that any necessity for the appointment of a receiver appears. These officers may conclude rightly that the bank is solvent; but, if a report of this character is to be made public, the inevitable result of such publicity would be the closing of the bank, however solvent, with consequent loss to depositors and irreparable injury to the state.

It is suggested by the attorney general that the confidential character of the information gained by the state examiner is qualified and that the ban of secrecy is lifted when an application for the appointment of a receiver is made; but the statute does not so provide. It declares that the information is confidential, to be made known only to the persons officially connected with the office of the state examiner, in the first instance. It is only when evidence of impairment or insolvency appears that the information may be imparted to anyone else, and then only to the governor and attorney general. The phrase ''except as hereinafter provided'' has reference to the persons to whom the information may be imparted and not to the character of the information after it is imparted.

Paraphrased, section 6098 reads: Any information gained by the state examiner from an examination of a private bank shall be confidential and shall not be imparted to any person who is not officially connected with the office

of the state examiner, except the governor and attorney general, and to them only in the event that evidence of insolvency or impairment appears.

Again, by the very terms of section 10540, an official [2] statement, to be admissible in evidence under the provisions of subdivision 6, section 10568, must be in writing; not in writing merely by reason of the whim or caprice of the person who makes the statement, but in writing because the law requires it to be so. In other words, by voluntarily incorporating in a writing something which the law does not require, a public officer cannot render admissible evidence otherwise incompetent. (*Flick* v. *Gold Hill & L. M. Min. Co.*, 8 Mont. 298, 20 Pac. 807.) There is not even a suggestion in the statute that the statement which the state examiner is required to make must be in writing. No one would have the temerity to urge that the deputies who prepare these reports, if sworn as witnesses in this case, would have been permitted to make the comments found in the reports or to express their opinions upon the values of loans based upon their inability to obtain sufficient information as to the financial responsibility of the borrowers.

Although not directly in point, the following authorities in principle sustain our conclusion: *Sturla* v. *Freccia,* 12 Ch. Div. 411; 5 App. Cas. 623; 21 E. R. C. 672; *Cushing* v. *Nantasket Beach R. Co.,* 143 Mass. 77, 9 N. E. 22; *State* v. *Krause,* 58 Kan. 651, 50 Pac. 882; 1 Greenleaf on Evidence, sec. 498.

These considerations convince us that the reports in question are not public writings within the meaning of the statute, but private, confidential communications, intended for the guidance of the officers named, and for their information only, and that the court erred to the prejudice of the defendant in admitting them in evidence.

In support of the rulings, the attorney general cites and relies upon *State* v. *Salmon,* 216 Mo. 466, 115 S. W. 1106, but the statutes under which the reports there considered

were prepared differ so greatly from our statutes that the decision is not applicable here. Furthermore, the Missouri court determined that the indictment against Salmon was invalid, which disposed of the case, but nevertheless it proceeded: "Notwithstanding we have reached the conclusion upon the first proposition that the indictment in this cause should be abated, yet it would be well to at least briefly suggest the conclusions we have reached upon some of the other most important questions. We shall not undertake to discuss at any length the remaining propositions, but after a most careful examination of them shall be content with a mere announcement of our conclusions." With respect to the reports in question the court said: "After a full consideration of this subject we have reached the conclusion that the reports of the bank examiners are properly admissible in evidence in a case of this character. The officers making such examinations are acting under oath and bond prescribed by the provisions of the statute. Their reports are official papers, and we see no valid reason why they are not competent evidence in the trial of a case in which one of the issues tendered is as to the solvency of the bank." The opinion does not disclose the character or contents of the reports, and, whatever may be said of the conclusion, we feel safe in asserting that no court of last resort ever has sanctioned or ever will sanction the admission of reports of the character of the ones before us.

2. Over the objections of counsel for defendant, the court [3] admitted in evidence certain writings designated in the record Exhibits 5A, 37A, 37B, 37C, 38A, 39, 40A. These purport to be entries in books, on deposit slips, *etc.*

It appears from the record that on February 15, 1924, C. M. McCoy took charge of the Butte bank, but by what authority is not disclosed. It does not appear that the governor and attorney general ordered the state examiner to take charge pursuant to the provisions of sections 6100 and

6101; but in any event McCoy was in possession until March 24, when he was succeeded by Harry L. Hanson, who had been appointed and had qualified as receiver.

The state called H. J. Fennemore, an accountant, to explain the purpose of the exhibits and the meaning of the entries. Fennemore testified that he was afforded access to the exhibits by Mr. Hanson, and Hanson testified that he received the exhibits from McCoy.

As stated heretofore, McCoy was not called as a witness, although he was in the state at the time of the trial. It does not appear from what source McCoy received the exhibits, when or by whom the entries were made, or whether they were made by anyone connected with the Butte bank. It is not pretended that the entries were made by or under the supervision of the defendant; indeed, it does not appear that the exhibits constituted any part of the records of the Butte bank, but, notwithstanding these omissions, the exhibits were admitted as tending to prove the insolvency of the bank and the partners operating it, and the entries furnished a basis for the argument made to the jury by the county attorney.

That the rulings admitting the exhibits were erroneous does not admit of doubt. They violated the elementary rule of evidence that, before book entries are admissible, it must be shown that the books were kept in the usual course of business, were kept honestly and correctly, and that the entries were duly made, contemporaneously with the transactions to which they relate. (*Ryan* v. *Dunphy,* 4 Mont. 356, 47 Am. Rep. 355, 5 Pac. 324; *Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643; *Smith* v. *Sullivan,* 58 Mont. 77, 190 Pac. 288; *McLean* v. *Rice,* 63 Mont. 556, 208 Pac. 252.)

3. Instruction 25 advised the jurors that, if they found [4] from the evidence beyond a reasonable doubt that Christian Yegen and Peter Yegen were partners conducting the Butte bank; that on February 14, 1924, the defendant un-

lawfully, feloniously, and willfully received the deposit in question, "and that at said time *the said partnership was insolvent* as defined and explained in these instructions, then you should find the said defendant Christian Yegen guilty as charged in the information."

The italicized words inject into the instruction an element of uncertainty calculated to mislead the jury. Although cases to the contrary may be found, the overwhelming weight of authority and the better reasoning sustain the rule that a partnership is not a legal entity; that it does not exist independently of the partners. (*Loomis* v. *Wallbloom,* 94 Minn. 392, 3 Ann. Cas. 798, 69 L. R. A. 771, 102 N. W. 1114; *Abbott* v. *Anderson,* 265 Ill. 285, Ann. Cas. 1916A, 741, L. R. A. 1915F, 668, 106 N. E. 782; *Hughes* v. *Gross,* 166 Mass. 61, 55 Am. St. Rep. 375, 32 L. R. A. 620, 43 N. E. 1031; *Francis* v. *McNeal,* 228 U. S. 695, L. R. A. 1915E, 706, 57 L. Ed. 1029, 33 Sup. Ct. Rep. 701; *Adams* v. *Church,* 42 Or. 270, 95 Am. St. Rep. 740, 59 L. R. A. 782, 70 Pac. 1037; *In re Peck,* 206 N. Y. 55, Ann. Cas. 1914A, 798, 41 L. R. A. (n. s.) 1223, 99 N. E. 358; Mechem's Elements of Partnership, 2d ed., sec. 6; 1 Rowley's Modern Law of Partnership, sec. 118.) And this view of the law has received the sanction of this court to a limited extent at least. (*Rockefeller* v. *Dellinger,* 22 Mont. 418, 74 Am. St. Rep. 613, 56 Pac. 822; *Doll* v. *Hennessy Merc. Co.,* 33 Mont. 80, 81 Pac. 625.) The decision in *Gardiner* v. *Eclipse Grocery Co.,* 72 Mont. 540, 234 Pac. 490, construing and applying the provisions of section 9089, Revised Codes, is not in conflict with the rule above. The instruction should have referred only to the insolvency of the partners.

Counsel for defendant requested the court to charge that the fact that the banks "owned or operated by the copartnership" were closed, is not *prima facie* evidence of the insolvency of the banks "or of the copartnership." The court modified the offered instruction to read that the fact

that the banks closed is not *prima facie* evidence of "the insolvency of the copartnership of which defendant was a member." The instruction in the form in which it was offered, as well as in the form in which it was given as instruction 13A, is open to the same objection as instruction 25 above.

4. Over the objection of defendant, the court gave instruction No. 12, as follows: "You are instructed that any [5] person, or the member of any copartnership or banking association, willfully or knowingly receiving deposits, money, or commercial papers, circulating as money, when such person or copartnership or banking association is insolvent, shall be guilty of a felony, and shall be punishable by imprisonment in the state prison for a term not less than six months or more than five years."

Section 6107, Revised Codes, declares that the punishment for receiving deposits in an insolvent bank shall be "imprisonment in the state prison for a term not exceeding five years."

Section 6081, as amended by section 3, Chapter 90, Laws of 1923, provides that the punishment for receiving deposits in an insolvent bank, except as in the Act permitted, shall be "a fine not exceeding ten thousand dollars or imprisonment in the state prison not exceeding five years, or by both fine and imprisonment as aforesaid."

Counsel for defendant insist that the instant case is governed by the provisions of section 6081 as amended, and that the trial court erred in defining the punishment applicable, but with this contention we do not agree.

Section 6107 was enacted originally as a part of Chapter 111, Laws of 1911, and section 6081 in its original form was enacted as a part of Chapter 89, Laws of 1915. Chapter 111 (now secs. 6095–6107, Rev. Codes 1921) deals with unincorporated banks exclusively, whereas Chapter 89, as enacted originally and as amended by Chapter 148, Laws of

1917 (now secs. 6014–6086, Rev. Codes 1921), assumes to deal primarily with banks incorporated under the laws of this state.

Section 62 of Chapter 89 (sec. 6081, Rev. Codes 1921) prescribed the penalty for receiving deposits in an insolvent bank, and by reference to section 2 of the same Act (sec. 6015, Rev. Codes 1921) the term "bank" is defined to mean "any corporation which shall have been incorporated to conduct the business of receiving money on deposit, or transacting a trust or investment business as hereinafter defined."

Chapter 90, Laws of 1923, did not repeal section 6015, and the amendments made to section 6081 are inconsequential and intended only to harmonize the provisions of that section with other provisions of the amending Act.

Although there were conflicting and contradictory provisions in section 6081 as originally enacted, which continue in the section as amended, we think it reasonably apparent that the penalty prescribed applies only to a violation of the terms under which deposits may be received in an incorporated bank which is insolvent. In other words, section 6107 prescribes the punishment for violating the Act relating to unincorporated banks, and section 6081, as amended, fixes the punishment for violating the Act relating to incorporated banks.

The effect of Chapter 14, Laws of 1915 (secs. 12075–12077, Rev. Codes 1921), the Indeterminate Sentence Act, was to amend section 6107 and fix the minimum term of imprisonment at six months. (*In re Collins,* 51 Mont. 215, 152 Pac. 40.)

5. Complaint is made of instruction 13, given by the [6] court. It defines insolvency, but refers to the insolvency of a "copartnership and banking association" instead of the insolvency of partners engaged in banking.

There is not any merit in the contention of defendant that the court should have given the definition contained in subdivision 10, section 1, Chapter 90, Laws of 1923. If de-

fendant desired a more specific statement concerning the
assets of the partners available to the payment of debts, he
should have requested an instruction incorporating his views.
In the absence of such request he cannot complain that in-
struction 13 is not sufficiently explicit. (*State* v. *Gordon,*
35 Mont. 458, 90 Pac. 173; *State* v. *Tracey,* 35 Mont. 552,
90 Pac. 791; *State* v. *Powell,* 54 Mont. 217, 169 Pac. 46.)

It is urged that the evidence is not sufficient to sustain
the verdict, particularly that it is insufficient to show that
Christian Yegen and Peter Yegen were partners, or that,
as partners or otherwise, they owned the Butte, Billings and
Gardiner banks, but, since the cause must be remanded for
a new trial, we refrain from expressing an opinion upon the
sufficiency of the evidence.

For the reasons stated, the judgment and order are re-
versed and the cause is remanded to the district court of
Silver Bow county for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of
illness, did not hear the argument and takes no part in the
foregoing decision.