No. 26,176.

OMER BERRY, *Plaintiff*, v. CARL J. PETERSON (ROY L. BONE substituted), as Bank Commissioner of the State of Kansas, *Defendant*.

No. 26,177.

SAMUEL B. JONES and JAMES A. UTTERBACK, *Plaintiffs*, v. CARL J. PETERSON (ROY L. BONE substituted), as Bank Commissioner of the State of Kansas, *Defendant*.

No. 26,178.

JAMES A. UTTERBACK, *Plaintiff*, v. CARL J. PETERSON (ROY L. BONE substituted), as Bank Commissioner of the State of Kansas, *Defendant*.

No. 26,179.

SAMUEL B. JONES, *Plaintiff*, v. CARL J. PETERSON (ROY L. BONE substituted), as Bank Commissioner of the State of Kansas, *Defendant*.

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Depositors' Guaranty Fund—Deposits Covered.* The plaintiffs' claims for deposits lost in the failure of a bank examined, and held to be valid and binding obligations against the bank depositors' guaranty fund.

2. SAME — *Depositors' Guaranty Fund — Special Deposits to Defeat Taxation.* Conceding but not deciding that two of the plaintiffs had made special deposits in the names of their brothers for the purpose of avoiding taxation, the civil and criminal penalties for such misdeeds are those imposed by statute, but such penalties do not include forfeiture of the protection of the guaranty fund for such deposits.

3. EVIDENCE — *Competency — Best Evidence Rule.* Error assigned in the exclusion of *ex parte* deputy bank examiners' reports considered and not sustained—following *State v. Krause*, 58 Kan. 651, 50 Pac. 882.

4. SAME — *Depositors' Guaranty Fund — Protection Afforded Director's Deposit.* Whatever consequences may fall upon a bank director because of his failure, if any, to discharge his duties as director, as a depositor of the bank he stands on the same footing as other depositors in the matter of protection afforded by the bank depositors' guaranty fund.

Banks and Banking, 7 C. J. p. 485 n. 82. Evidence, 22 C. J. pp. 805 n. 53, 989 n. 46.

5. SAME — *Depositors' Guaranty Fund — As of What Date Certificates Issued.* Rule followed that where the claims of depositors of a failed bank are a proper charge upon the bank depositors' guaranty fund, certificates on that fund should be issued as of the date of the bank failure; and the fact that such claims, being valid, have been resisted in litigation does not have the effect of displacing those claims and postponing their right of precedence over later demands against the guaranty fund.

Original proceedings in mandamus. Opinion filed March 12, 1927. Writs allowed.

*R. F. Crick, L. G. Turner,* both of Pratt, *Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the plaintiffs.

*William A. Smith,* attorney-general, *John G. Egan,* assistant attorney-general, and *Clark A. Wallace,* of Kingman, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: These are four original proceedings in mandamus to require the bank commissioner to issue certificates against the bank depositors' guaranty fund in behalf of plaintiffs who claim to have been depositors in the Farmers State Bank of Cunningham, which closed its doors through insolvency on July 14, 1923.

The affairs of the bank have been wound up, and all depositors except these plaintiffs promptly received certificates on the guaranty fund which eventually were paid in full.

In case No. 26,176, the plaintiff, Omer Berry, demands a certificate on the guaranty fund on account of a certificate of deposit in the defunct bank for $5,000 and on account of a checking deposit in the sum of $16,033.33.

In No. 26,177, the plaintiff, Samuel B. Jones and James A. Utterback, partners in ranching and related enterprises in Kingman county and thereabout, demand a certificate for $1,994.94, which was the amount they had on deposit in their partnership checking account.

In No. 26,178, James A. Utterback, plaintiff, demands a certificate on the guaranty fund for $50,000, being the sum of an alleged deposit made by him in December, 1917, on behalf of a brother, Benj. J. Utterback, and which on the failure of the bank was reassigned to plaintiff.

In No. 26,179, Samuel B. Jones, plaintiff, demands a certificate on the guaranty fund for $50,000, being the sum of an alleged deposit made by him in December, 1917, on behalf of a brother,

Thomas F. Jones, and which on that brother's death was transferred to another brother, J. B. Jones, and on the failure of the bank was retransferred to plaintiff.

On the refusal of the bank commissioner to issue the certificates demanded, these actions were begun. Issues of fact were joined on the bank commissioner's answer and return to the alternative writs which necessitated the appointment of a commissioner to examine witnesses and report his findings of fact and conclusions of law. Charles Blood Smith, Esquire, of Topeka, was commissioned and he served in that capacity, and his comprehensive and painstaking report is now before us. His findings and conclusions are favorable to plaintiffs in each of the cases; and counsel for defendant acquiesce therein so far as No. 26,176 and No. 26,177 are concerned, except on a detail which will be noted at the conclusion of this opinion.

The controlling features of the commissioner's findings and conclusions touching Nos. 26,178 and 26,179, which involve the two alleged deposits of $50,000 each, are tenaciously contested by counsel for defendant; consequently under the rule announced in *State, ex rel., v. Foley,* 107 Kan. 608, 193 Pac. 361, and *State, ex rel., v. Anderson,* 117 Kan. 117, 232 Pac. 238, we have gone thoroughly into the evidence on our own responsibility.

So far as needs presently to be stated, it appears that James A. Utterback, plaintiff in No. 26,178, and Samuel B. Jones, plaintiff in No. 26,179, are elderly bachelors who came from Kentucky to southwestern Kansas many years ago. They became partners, and for nearly half a century they have dealt in lands, cattle, horses, and in kindred activities of the frontier. In December, 1917, the partners had a deposit account in the Farmers State Bank of Cunningham in excess of $100,000, according to their testimony. (Defendant concedes that it was as much as $78,980.72.) The partners decided that as they were growing old and neither had a wife or child, it would be advisable for each of them to take $50,000 from their joint account and make disposition of the same. Utterback wished to give such a sum to his brother Benjamin, a resident of Kentucky, and Jones wished to make a similar provision for a blind brother Thomas. Accordingly they explained their wishes to the cashier of the bank, R. W. Hart; and the sum of $100,000 was withdrawn from the partnership deposit account, and two new deposit accounts of $50,000 each were opened, one in favor of Benjamin Utterback

and the other in favor of Thomas F. Jones. Later, Thomas died and the deposit account in his favor was canceled and one opened in lieu thereof in favor of J. B. Jones, another brother of plaintiff. Utterback and Jones showed title by assignment to the deposit accounts thus originally instituted by them.

The evidence for the defense tended to show that the partnership account stood at the figure of $78,980.72 when these two $50,000 accounts were opened; that the placing of these large sums in the names of plaintiffs' brothers was for the purpose 'of concealing the money to escape taxation thereon; and that the cashier of the bank was authorized by plaintiffs to loan the money to borrowers at high rates of interest, and that the notes evidencing loans so made, together with the interest thereon and the fluctuating balances of cash pertaining thereto, should be kept in a tin box in the bank vault, and that no account of such transactions should appear in the books of the bank nor any record thereof save only what would be shown by the contents of the tin box itself; and that pursuant to this arrangement, entered into in 1917, the cashier handled this fund until the collapse of the bank in 1923, when the tin box revealed a miscellaneous assortment of notes and colorable commercial paper out of which the receiver realized $300, but which is otherwise worthless. This evidence for defendant was largely the testimony of the cashier and the assistant cashier and the receiver first appointed to take charge of the bank in July, 1923. Their testimony was thoroughly discredited on cross-examination. A much more credible explanation of the contents of the tin box, fairly deducible from all the circumstances, is that it was the convenient receptacle for the bank's notes which would not pass the scrutiny of a reasonably painstaking bank examiner. Among these notes were some nominally payable to the bank, some payable to nobody in particular, none payable to either of these plaintiffs nor indorsed to them, and some for large sums of money bore the signature of the cashier or assistant cashier as maker. These men, particularly the assistant cashier, were financially irresponsible; so if their testimony should be given a shadow of credence it would be that by the arrangement of 1917 they were authorized to loan *to themselves* thousands of dollars of the money of these two old ranchmen. Of plaintiffs' two deposit accounts aggregating $100,000, and admittedly standing for an aggregate of $78,-980.72, nothing of value remains except $300 which the receiver

collected from somebody in satisfaction of a tin-box note and which, if we correctly understand the testimony of the receiver on cross-examination, he confessedly embezzled and still retains.

Defendant emphasizes the evidence which tends to show that at the time the two $50,000 deposits were made there was no more than $78,980.72 in the partnership deposit account. This may be correct if we assume, as may very well have been the case, that the criminal management of the bank, which eventually ruined it, had begun prior to December, 1917, and that the partnership deposit had already been unlawfully invaded by the cashier before Utterback and Jones requested him to open the two $50,000 accounts and charge the same against their partnership deposit account. On no other conceivable theory can the conduct of the cashier be explained in opening two $50,000 accounts out of a deposit already depleted to $78,980.72. But since there is no credible evidence tending to show that Jones or Utterback knew of any such depletion of their partnership deposit account, their claims on the guaranty fund cannot be defeated for any such reason.

Defendant also emphasizes the testimony of the cashier, assistant cashier and the receiver, which was to the effect that the primary purpose of Utterback and Jones in opening the two $50,000 deposit accounts in favor of their brothers was for the purpose of concealing their assets to avoid assessment and taxation. While we attach no particular credence to the testimony of defendant's witnesses on this point, the evidence inherent in the circumstances does tend somewhat to support that view. But what of it? The consequences of failing to list property for taxation are multiple taxation of the property when the owner's delinquency is discovered (R. S. 79-1427, 79-1431), together with the pains and penalties of the criminal law (R. S. 79-1408, 79-1420). It is no defense to a claim against the guaranty fund.

Defendant complains of the commissioner's exclusion of certain official reports made by the deputy bank examiners to the bank commissioner. These reports were *ex parte* so far as concerned these plaintiffs, and were largely abridgments of what the bank records disclosed. The latter were in evidence, and under the better-evidence rule the commissioner's ruling was correct. (*State v. Krause,* 58 Kan. 651, 50 Pac. 882.) See, also, the instructive case of *State v. Yegen,* 74 Mont. 126. We have looked into these reports, however,

and discern nothing therein of the slightest weight in determining the merits of plaintiffs' claims against the guaranty fund.

One point especially urged against the claim of Utterback in No. 26,178 is that he was a director in the defunct bank and presumptively aware of the true status of its affairs. Whatever consequences may befall Utterback because of his directorship, it would be unjust to add thereto, by mere judicial edict, the penalty of losing his right of reimbursement out of the guaranty fund. That contention was considered and condemned in *Farrens v. Farmers State Bank,* 101 Neb. 285 (quoted at length in *State Bank v. Bank Commissioner,* 110 Kan. 520, 525, 526, 204 Pac. 709), where it was held that a director of a bank, as regards a deposit made by him in the bank of which he was a director, stood in the same position as any other depositor and was entitled to the protection afforded by the depositors' guaranty fund.

Viewing this point as purely a question of fact it is incredible that Utterback could have known that the $100,000 (or $78,980.72) had been frittered away so that nothing remained of that large sum of money except the bundle of worthless trash which comprised the contents of the tin box found in the vault of the bank at the time of its failure.

The court adopts the commissioner's findings of fact, and his principal conclusions of law naturally follow therefrom.

Counsel for the bank commissioner make a suggestion touching all these cases, that if plaintiffs prevail they ought not to have certificates on the guaranty fund issued as of the date when they would have been issued if their claims had not been contested. This court can understand and appreciate the stout resistance the bank commissioner and his counsel have made to plaintiffs' claims upon their merits. Doubtless that resistance was made in the best of faith; but now that the cases are tried and determined in favor of plaintiffs, we can perceive neither justification nor excuse for postponing their adjudicated claims on the guaranty fund some three years later than the date when they should have been honored and paid. This matter is regulated by statute. (R. S. 9-204.) We have gone into this question thoroughly heretofore, and deem it unnecessary to discuss it further at this time. (*Songer v. Bank Commissioner,* 114 Kan. 900, 220 Pac. 1060; *State, ex rel., v. Bone,* 121 Kan. 151, 246 Pac. 180; *Thompson v. Bone,* 122 Kan. 195, 251 Pac. 178.) Until there

is a proper invocation of such remedies as the established principles of law or equity may afford, the court can take no cognizance of the present condition of the guaranty fund. Plaintiffs' rights are governed by the condition of the fund at the time the Farmers State Bank of Cunningham collapsed in 1923, not by what may be its condition now if later claims upon the fund have been given precedence over those which became absolute in 1923—like those of the plaintiffs in these four cases.

The writs are allowed.