STATE, RESPONDENT, *v.* RAY, APPELLANT.

(No. 6,712.)

(Submitted November 7, 1930. Decided November 26, 1930.)

[294 Pac. 368.]

438

*Messrs. Ayers & Ayers* and *Mr. Earl Wineman,* for Appellant, submitted a brief; *Mr. Robert C. Ayers* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. H. O. Vralsted,* County Attorney of Judith Basin County, for the State, submitted a brief; *Mr. S. R. Foot* and *Mr. Vralsted* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant was convicted of the crime of grand larceny. His motion for a new trial was denied and he appealed from the judgment and order denying the motion. The sufficiency of the information is not challenged. It charged the larceny by defendant on July 2, 1928, of $216 belonging to the county of Judith Basin. The following is a brief summary of the evidence:

Defendant on July 2, 1928, was the county treasurer of Judith Basin county. On that day he issued a check in the sum of $216, payable to Frank C. Whittaker and signed "Yogo Lead and Zinc Co., By C. O. Ray." The check was given in payment of salary of Whittaker and others for work performed for the Yogo Lead & Zinc Company at the instance of defendant Ray, who was manager of the company. When the check was delivered to Whittaker, defendant said to him, "You sign it and I'll give you the money." Thereupon

Whittaker indorsed the check and returned it to defendant, who cashed it with money taken from a drawer behind the counter in the county treasurer's office. Defendant thereupon placed the check in the drawer from which the money was taken. The check was held in the county treasurer's office until August 15 or 16, when it was turned over to the deputy state examiner. It was, with the knowledge of defendant, carried as cash in the county treasurer's office from July 2 until August 15 or 16. An attempt was made to cash it on the 15th or 16th of August, but it was not honored. Without considering this check, the Yogo Lead & Zinc Company on July 2 had an overdraft in the bank on which the check was drawn. The largest balance in the mining company's account in the bank between July 2 and August 20, was $52.66.

For the purpose of corroboration and to show the plan and system of defendant, a number of other checks were introduced in evidence, together with evidence that they were handled in the same manner as the $216 check. Many of these checks were executed by C. O. Ray personally, while some were signed by "Yogo Lead & Zinc Co., By C. O. Ray, Mgr."

The state also, over the objection of defendant, introduced in evidence certified copies of a report and supplemental report of the deputy state examiner, dated April 14, 1927, and December 18, 1928, respectively. The correctness of the ruling of the court in admitting these reports is the only question presented on this appeal.

The supplemental report is the only one which is claimed by defendant to contain prejudicial matter. It contains these statements: "To deficit August 20, 1928, 10:30 A. M. (as shown in report September 11, 1928), $5,348.12. To illegal payments made from Redemption Fund (see Report September 11, 1928) $141.21. To total liability Mr. C. O. Ray, former county treasurer and United States Fidelity and Guaranty Company of Baltimore (as shown in report of Septem-

ber 11, 1928') $5,489.33. * * * Total liability of Mr. C. O. Ray and his bondsmen $6,200.50.''

The supplemental report was made by deputy state examiner A. M. Johnson, who said it was ''made up from the files, records, books and papers in the county treasurer's office.'' Later in his examination he twice said ''it was made from books, records and affidavits,'' on file in the treasurer's office of Judith Basin county.

The defendant contends that this report was inadmissible because of the decision of this court in *State* v. *Yegen*, 74 Mont. 126, 238 Pac. 603, wherein it was said: ''Again, by the very terms of section 10540, an official statement, to be admissible in evidence under the provisions of subdivision 6, section 10568, must be in writing; not in writing merely by reason of the whim or caprice of the person who makes the statement, but in writing because the law requires it to be so. In other words, by voluntarily incorporating in a writing something which the law does not require, a public officer cannot render admissible evidence otherwise incompetent. (*Flick* v. *Gold Hill & L. M. Min. Co.*, 8 Mont. 298, 20 Pac. 807.) There is not even a suggestion in the statute that the statement which the state examiner is required to make must be in writing.''

The supplemental report was made pursuant to subdivision 7 of section 210, Revised Codes 1921, as amended by Chapter 78, Laws of 1923, which provides: ''The state examiner, or his assistants, after the examination of the affairs of any county officers, must make report of such examination to the board of county commissioners and to the county attorney of such county, within thirty days after such examination; and if any violation of law or non-performance of duty is found on the part of any county officer or board, such officer or board must be proceeded against by the county attorney of the county as provided by law.''

That the report is required by law to be in writing is plain, when consideration is given to Chapter 81 of the Laws of 1927. This Chapter provides: ''Upon the receipt of the state

examiner's report covering the examination of the affairs of any county, it shall be the duty of the board of county commissioners of such county, to have such report entered and made a part of the minutes of the next regular meeting of such board; provided such report shall not be published by the board of county commissioners as a part of the minutes of its proceedings. Provided, further, that the state examiner shall, at the time such report of examination is forwarded to the county commissioners, send a like copy to the official newspaper of the county for publication. Such publication shall be had once in the official newspaper forthwith, and shall be a charge against the county at the same rate as provided for in the contract for county printing for proceedings of the county commissioners.''

Since the law contemplates that the report here in question shall be in writing, it follows that the above-quoted language from the case of *State* v. *Yegen,* supra, is not necessarily determinative of the question of its admissibility.

Section 10570 of our statute provides: "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or any other person in the performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein.''

The precise question before us is this: Are entries made in the report of the deputy state examiner ''entries in public or other official books or records,'' within the meaning of section 10570? The adjudicated cases are not in accord on the question of the admissibility of such reports. In Oklahoma they have been held admissible. (*Hays* v. *State,* 22 Okl. Crim. 99, 210 Pac. 728; *Arnold* v. *Board,* 124 Okl. 42, 254 Pac. 31.) Also, in *Butler* v. *State,* 17 Ala. App. 511, 85 South. 864, they were held admissible in view of an express statute, but only in so far as the matters contained in the report were germane to the issues and since the party making the report was before the court and subject to cross-examination. In Kansas they have been held inadmissible. (*State* v. *Krause,* 58 Kan. 651, 50 Pac. 882; *Berry* v. *Peterson,* 123 Kan. 4, 254 Pac. 394.)

Our statute, section 10570, it should be noted, does not relate to entries in reports of public officers, but only to entries in books or records. We think the rule applicable here was correctly stated by the court in the case of *Commonwealth* v. *Slavski,* 245 Mass. 405, 29 A. L. R. 281, 140 N. E. 465, 469. In that case the court, after making reference to a certain class of public records that had been held admissible by the courts of that state, and after citing a number of cases holding certain reports inadmissible, summarized its conclusion as follows: ''The principle which seems fairly deducible from them is that a record of a primary fact made by a public officer in the performance of official duty is, or may be made by legislation, competent prima facie evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinions, and making conclusions, are not admissible as evidence as public records.''

We think the report of a deputy state examiner as to the result of his investigation of a county office, while possibly admissible for certain purposes in a proper case, is not a public or official book or record, within the meaning of section 10570 and that it is not admissible as evidence of the facts stated therein. The reports are simply intended for the guidance of the county commissioners and county attorney and, in themselves, are not a source of evidence as to the facts stated in them. The legislative scheme for making and publishing these reports was designed for the purpose, also, of advising the electors of the county of the faithfulness of their public servants.

The books and records in the office of the county treasurer were the best evidence of the facts disclosed by them, and the objection to the introduction of the report on the ground that it was secondary evidence merely, should have been sustained. Furthermore, the supplemental report is objectionable for another reason. It is shown to be based upon ''books,

records and affidavits.'' What the affidavits contain or by whom made is not apparent.

The supreme court of California, in the case of *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406, 26 A. L. R. 116, 209 Pac. 26, held that statutes making public records receivable as prima facie evidence have no application to the report of a county autopsy surgeon which was made to the coroner and filed with the county clerk. The report was shown to have been based partially upon ''a history of a severe strain while plowing and striking a large root.'' The court in that case said: ''It was hearsay 'twice removed,' and should have been excluded.'' Since the supplemental report here was shown to be based upon ''affidavits,'' it is subject to the same condemnation. .

In *Hale* v. *Cole*, 241 Mich. 624, 217 N. W. 898, 899, the court held that the report of the chief of the fire department required by law to be filed with the state fire marshal was inadmissible as evidence. In that case it appears that the report was based upon a partial personal investigation and information furnished to the master mechanic. The court stated the general rule as follows: ''As a general rule, in the absence of a statute, the report of an officer, not made on his personal knowledge, is not admissible as substantive evidence of the facts reported.'' Since the report in question is shown to be based at least partially upon affidavits, it was clearly hearsay and should have been excluded.

But it is contended by the state that the report is admissible ▮ because, in effect, it constitutes the result of an examination of voluminous records by an expert accountant.

The rule is that where a fact can be ascertained only by examination of voluminous records, a competent witness who has perused the entire mass may state the net result of his examination. (Wigmore on Evidence, 2d ed., sec. 1230; Jones' Commentaries on Evidence, 1st ed., sec. 206; *State* v. *Olson*, (Utah) 287 Pac. 181; *State* v. *Ewert*, 52 S. D. 619, 219 N. W. 817; *State* v. *Clark*, 47 Idaho, 750, 278 Pac. 776; *State*

446

v. *Colson,* (Mo.) 30 S. W. (2d) 59; *Stevens* v. *United States,* 41 Fed. (2d) 440.)

But the difficulty here is that the deputy examiner was not asked regarding the result of his examination, but his written report was introduced as a substitute for oral evidence. This may not be done, particularly where, as here, the report was based, in part at least, upon affidavits. The only evidence given by the deputy who made the report, aside from the report itself, was that the item of $6,200.50 specified in the report as a shortage included the check of $216. This evidence went in without objection and was obviously not based upon hearsay, for the witness testified: "This check was given me by Percy Goyins [the assistant county treasurer under defendant Ray]; in making the figures this check $216 was included in so far as it had to be eliminated because there was no cash that could be delivered for the check."

The written report of the deputy examiner, under the circumstances here disclosed, was not admissible in evidence under any theory.

The contention is also made that under the circumstances of this case the judgment ought not to be reversed even though the report was improperly received in evidence. It is asserted by the state that the admission of the report, if erroneous, was harmless. We think this contention must be sustained. Technical errors and exceptions which do not affect substantial rights furnish no ground for reversal. (Sec. 12125, Rev. Codes 1921; *State* v. *Prouty,* 60 Mont. 310, 199 Pac. 281.)

Defendant was charged with the larceny of $216. He did not attempt to explain the transactions disclosed by numerous checks introduced in evidence by the state other than the $216 check. There was evidence that defendant made statements to witnesses for the state that his shortage was thirty-eight or thirty-nine hundred dollars. This evidence went in over objection that it was not shown that the statements were voluntarily made. The evidence was properly received, for the record shows that no inducements or hopes were held out

to defendant and no promises or threats were made. Whether the statements be regarded as confessions or admissions against interest, they were admissible under the showing made of their voluntary character. (*State* v. *Stevens*, 60 Mont. 390, 199 Pac. 256.) This evidence was undenied by defendant. Neither did he contradict the evidence of shortage disclosed by the report of the deputy examiner.

Evidence of other items of shortage was admissible solely for the purpose of showing the system pursued by defendant and to show criminal intent and the court properly instructed the jury to that effect. He denied the larceny of the $216 and testified that he paid the check in that amount from his personal funds kept in a private drawer in his office. He testified that he had borrowed the money from Robert Brooks, and Brooks corroborated him in this respect. The only issue tendered at the trial was whether defendant paid the $216 with county money. No issue was tendered as to other items of shortage. The only purpose of the report was to show items of shortage other than the $216 item. The oral evidence of the deputy examiner, which, as above noted, went in without objection, is the only indication that the report included the $216 check as part of the shortage. Since the defendant did not dispute the evidence offered by the state that there were other items of shortage, he was not prejudiced in the least by the report.

The evidence showing that defendant admitted to state's witnesses that his shortage was between thirty-eight and thirty-nine hundred dollars, and the evidence of other checks handled in the same manner as the $216 check, being uncontradicted, established conclusively the system of defendant and the criminal intent without the report, and hence its erroneous admission in evidence under the circumstances was not prejudicial to the defendant.

Accordingly, the judgment must be, and is, affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.

Rehearing denied December 26, 1930.