SMITH, Appellant, v. FISCHER, et al, Respondents.

(237 N. W. 718.)

(File No. 6739. Opinion filed July 20, 1931.)

*Sutherland, Payne & Linstad,* and *T. R. Thorson,* all of Pierre, for Appellant.

*Martens & Goldsmith,* of Pierre, for Respondents.

POLLEY, P. J.   This action is brought by the superintendent of banks on behalf of the Cottonwood State Bank, which is in the hands of the superintendent of banks for liquidation.   The action is based on the provisions of sections 8980 and 8990 of the Revised Code of 1919.   Section 8980 reads as follows:   "No individual, firm or corporation transacting a banking business in this state shall loan to any corporation, partnership or individual, including all loans made to the several members of such corporation or partnership, more than twenty per cent of the paid up capital and surplus of such bank.   And in no case shall the total liabilities of the several stockholders of any bank, including any and all liabilities of any partnership or corporation in which such stockholders may be interested, to such bank, exceed fifty per cent of the paid-up capital of such bank.   But the discount of bills of exchange drawn in good faith against actually existing values, and the dis-

count of commercial paper actually owned by the person negotiating the same, shall not be considered as money borrowed by such person."

Section 8990, so far as applicable to this case, reads as follows: "Every officer and director of any bank shall be held personally liable for all excessive loans made by his bank, in such amount as such loan may be in excess of the amount limited by law."

The complaint alleges that during the years 1919, 1920, 1921, and 1922 and up to the suspension of the said bank on September 25, 1923, the defendants as directors of said bank made excessive loans to the following parties and in the following amounts, to wit:

| | |
|---|---|
| A. R. Morse | $ 1,741.00 |
| John Penzein | 3,189.55 |
| Rozenberger Bros. | 10,000.00 |
| Hall Bros. | 9,482.78 |
| P. W. Hickman | 5,000.00 |

To illustrate the theory of the plaintiff, and the manner by which he arrives at the amount due on account of the loans made to each debtor, we set out the details of the Penzein loans as follows:

On October 4, 1920, the bank had loaned John Penzein $7,115.99, of which amount $2,245.36 was in excess of the amount to which he was entitled under the provisions of section 8980. Thereafter, payments were made on said indebtedness by Penzein which reduced his indebtedness to an amount within the legal loan limit. Thereafter his loans were increased until they exceeded the legal limit to the extent of $115.99. Again his indebtedness was reduced by payments to an amount within the legal limit. Thereafter his indebtedness was increased to an amount $291.60 in excess of the legal loan limit. Again his indebtedness was reduced to to an amount within the legal loan limit and then increased to an amount $536.60 in excess of the loan limit. These four amounts added together equal $3,189.55, and this is the amount of the excess claimed on account of the Penzein loans. The amount of the excess on the loans of other debtors was arrived at in the same manner and aggregate the sum of $29,413.33. In computing the amount of the indebtedness for the purpose of ascertaining the amount of the excess, unpaid interest has properly been excluded.

Prior to the suspension of the bank, payments had been made by or on behalf of all of these debtors sufficient to reduce the balance due by them to the legal loan limit of the bank, and the trial court made a finding of fact relative to each of the said defendants, as follows: "That prior to the time the said bank closed and was taken into custody of the said Superintendent of Banks, the directors of said bank paid or caused to be paid, into said bank all of the indebtedness of the said Penzein which exceeded twenty per cent of the capital and surplus of said bank, and the notes representing said excessive indebtedness were removed from the assets of said bank." The court held that such payments paid all of said loans that were in excess of the legal loan limit and that defendants were thereby released from liability under the provisions of the above quoted statutes. Judgment was entered in favor of the defendants, and from such judgment and an order overruling his motion for a new trial, the plaintiff appeals.

It is the contention of the respondents that where excessive loans have been made and the directors have become liable for the excess under the provisions of Section 8990, the debtor may pay an amount equal to the excess thereby reducing the amount of the loan to within the legal limit and that this would release the directors from liability; or that the directors may pay into the bank an amount equal to the excess and take an assignment from the bank of an equal amount of the debtor's paper, and thereby become released from liability for the excess. With this contention we are not able to agree. The purpose of enacting section 8980 was to prevent the loaning of too great a percentage of the bank's capital and surplus to one person or company, and the purpose of section 8990 was to make the directors liable for the amount of loans in excess of the amount permitted by section 8980. It was the intent of the Legislature in enacting section 8990, to add to the liability of the debtor the liability of the directors to the extent of the excess. Payment by the debtor of an amount equal to the excess does not release the directors, neither does advancing that amount by the directors, if they take out an equal amount of the debtor's paper. If this were allowed the directors could then reimburse themselves by collecting from the debtor and in this way exhaust the ability of the debtor to pay without benefiting the bank. In this way they would be taking out as much

as they put in. If a debtor made a loan of $5,000 of which amount $1,000 was in excess of the legal limit, and then paid $4,000, this would not release the directors of their liability for the amount of the excess; but if the debtor paid all or any part of the remaining $1,000, such amount would apply on the liability of the directors and reduce their liability to that extent. On the other hand, if a loan were made of $5,000 of which amount $1,000 was in excess of the legal limit and the directors paid part or all of the excess, they would be released from liability on such loan to the extent of the amount so paid.

The liability of the directors arises immediately upon the making of an excess loan and continues until the directors pay the amount of the excess or until the debtor pays the entire debt. Farmers' State Bank v. Youngers, 47 S. D. 592, 200 N. W. 1019.

To put upon this law the construction contended for by the respondents would work a practical nullification of the law. If a debtor made a loan of $5,000 of which amount $1,000 was in excess of the legal limit and then was able to pay but $4,000, the $1,000 excess would be lost because the first $1,000 paid by the debtor would be applied on the liability of the directors and they could not be called upon to pay anything. It was to take care of just such cases that the law was enacted.

Section 8990 makes every officer and director liable only for "excessive loans made by his bank." "The discount of bills of exchange, drawn in good faith against actual existing values, and the discount of commercial paper actually owned by the person negotiating the same, shall not be considered as money borrowed by such person." Section 8980. It is contended by respondents that there is no evidence showing or tending to show that the loans involved in this case were not discounts of commercial paper actually owned by some other person and sold to the bank, and that there is no proof to show that the notes involved were not forgeries. This contention is not supported by the record. The contents of the books of the bank were introduced in evidence. The entries in these books indicate that all the transactions with these debtors were cash transactions. There is nothing to indicate that these notes were taken in payment for "property sold." When a note was taken the maker was credited with cash, indicating that the note was taken for money loaned to the maker.

The bank president testified in regard to some of the transactions and referred to them as so much money loaned. An expert witness who testified for the plaintiff testified positively that the transactions shown were loans made by the bank, and one of the defendants while on the stand explained in his testimony that the loans in question became excessive because the borrowers were big stockmen and were obliged to borrow heavily from the bank in order to get their stock through the winter. All these facts and circumstances are sufficient, prima facie, at least, to show that the transactions involved were loans, and whether the transactions involved were other than loans, or the notes forgeries, were matters of defense to be shown by the defendants.

■ It is contended by respondents that no sufficient foundation was laid for the admission of testimony of the contents of the books of the bank. An expert accountant was called by the plaintiff who testified to an audit he made of the books of the bank after it closed to determine the excess liability of the directors. But respondents claim that he "did not in any way attempt to verify whether or not these books were correctly kept, nor make any trial balance of the bills or any complete audit," but that none of the books were introduced in evidence, nor were all of the books used in making computations and calculations brought into court for the purpose of examination by the respondents. This claim is too indefinite to present any tangible question to the court. No particular book or instrument is designated, and no demand was made for anything that was not produced in court nor does it point out how defendants were in any manner prejudiced. The books were identified by a witness who acted as cashier of the bank for several years before it closed. He testified that the books were kept in the regular routine of business and under the supervision of the president and cashier of the bank. He told who kept the books and testified that they were kept by employes of the bank in the performance of their regular duties as such employes. Respondents cite and rely upon State v. Yegen, 74 Mont. 126, 238 P. 603, in support of this contention. But the cases are not analogous. The documents involved in that case were certain reports that had been made and filed by the public examiner, no part of which was verified in any manner, and much of which was the mere opinion and estimate of the party who made the reports, and were hearsay in the highest degree.

At the time the loans involved in this case were made the board of directors consisted of Frank G. Fischer, Anton S. Fischer, John I. Howe, C. L. Lear, and Ludger Labrecque. At the time of the commencement of the action, Howe and Lear were out of the state and were not served with the summons. Labrecque died shortly before the bank closed, and Nancy Labrecque as executrix of Labrecque's will was named as a defendant. But the action against her was dismissed. This leaves only the two Fischers as defendants, and they contend that because of such dismissal they have lost the right of contribution against the Labrecque estate in the event that they are held liable in this action. This contention is based upon the theory that the directors' liability for making excess loans is a joint and not a several liability and that to release one works a release of all. But the wording of the statute precludes this theory. The statute, section 8990, says: "Every officer and director of any bank shall be held personally liable for all excessive loans made by his bank." This plainly makes every officer and director severally liable for all excessive loans.

It is contended by respondents that plaintiff's cause of action, in part at least, is barred by the statute of limitations. This depends upon whether the case is governed by section 2298 or section 2299, Rev. Code of 1919, as amended by chapter 282, Laws 1921, § 2. Section 2298 (as amended by Laws 1921, c 282, § 1) provides the six-year limitation, and subdivision 2 thereof reads as follows: "An action upon a liability created by statute, other than a penalty or forfeiture." Section 2299 provides the three-year limitation, and subdivision 2 thereof reads as follows: "An action upon a statute, for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, except where the statute imposing it prescribes a different limitation." That the cause of action involved in this case is based upon a statutory liability cannot be questioned, but this does not imply that it is for a penalty or forfeiture. It is clear from the wording of subdivision 2 of section 2298 that all actions based upon a statutory liability are not for a penalty or forfeiture. Section 8990 is not penal. It was not enacted for the purpose of punishing a person for an offense against the state, but to provide a remedy to a person who had been injured by a wrongful act. Hunt-

ington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123. If the statute had been enacted for the purpose of inflicting a penalty for a wrongful act, the wrongdoers would have to pay the penalty, regardless of whether the debtors paid the excess loans; but if the debtor pays the loan the liability of the director is fully satisfied. The liability of the director is only that of a debtor, and while as to him the payment of the debt may be a penalty, it is a remedy for the collection of the debt due the bank. In Jones v. Barlow, 62 N. Y. 202, it is held that the statute is penal as to the directors but remedial in favor of creditors. When an excess loan is made by the directors, their liability is immediate, and from then on the relationship of debtor and creditor exists as to the amount of the excess, and the remedy is in no way different from other cases of debtor and creditor and the same statute of limitation ought to apply to both debtor and creditor.

In respondents' brief they say: "The true distinction between whether a statute is penal or remedial, is that if a statute authorizes a recovery without regard to the actual damage sustained, or whether no damage has been sustained, it is penal; while if it merely authorizes a recovery of the actual damage sustained, it is remedial and not penal." Assuming that this is a correct statement of the law, the statute under consideration is remedial only, because the directors can never be called upon to pay any part of a debt that has been paid by the debtor, and only so much of any debt as is "excessive" under the provisions of section 8980 can be collected from the directors. Another reason why this class of actions should be governed by section 2298, rather than section 2299, is that the directors occupy a position in some respects analogous to that of principal and surety, and therefore the directors should not be permitted to escape liability by the statute of limitations so long as an action may be maintained against the principal debtor.

The question of whether a statute is penal or remedial depends upon "whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act." Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 230, 36 L. Ed. 1123. This action is clearly for the purpose of affording a private remedy.

Statutes similar to ours have been frequently under consideration by the various courts and with varying results. No case that has been called to our attention attempts to lay down a rule that furnishes a guide that can be generally applied. Many of these cases have been collected and reviewed in Huntington v. Attrill, supra; and in 4 Fletcher, Cyclopedia Corporations, p. 3843 et seq., is a lengthy discussion of the subject that leads to no satisfactory result. Respondents cite and rely upon Sturges v. Burton, 9 Ohio St. 215, 72 Am. Dec. 582. That case, to some extent at least, is analogous to this, and by a line of reasoning not easy to follow the court reaches the conclusion that the action is one to recover a penalty and that the short statute applies. We believe that this conclusion is contrary to the more recent trend of opinion, and that the action should be governed by the provisions of section 2298.

■ In holding, as we do, that the liability of the directors under section 8990 is purely statutory, we are aware that we are in conflict with what is said in Ranchman's State Bank v. Lenning, 53 S. D. 250, 220 N. W. 485, where, by a divided court, we held that the liability imposed by section 8990 is contractual in nature and falls within the provisions of section 3389, Rev. Code 1919, which forever bars all "claims arising upon contract," unless presented within the time fixed by section 3387, Rev. Code 1919. We are satisfied that we were wrong in our holding in that case. The idea that the liability created by section 8990 is contractual, is based upon the theory that by accepting the position of director or officer of a bank such director or officer impliedly agrees to pay to the bank or the bank's creditors all excess loans made by the bank, regardless of whether he participated in the making of such loans or had knowledge of the making thereof. This we believe is carrying the doctrine of implied contract beyond reasonable bounds, and hereby expressly overrule what is said in the Ranchman's Bank Case.

■ ■ Upon the record before us the plaintiff is entitled to judgment, but not for the amount claimed in the complaint. When Penzein borrowed $7,115.99, there was an excess of $2,245.36. Payments were afterwards made by him which reduced the amount he owed to an amount within the legal loan limit. The loan was then increased by a renewal to an amount exceeding the loan

limit to the extent of $115.99. The plaintiff contends that this amount should be added to the existing excess of $2,245.36, and that each of the excesses thereafter created should be treated likewise. With this theory we do not agree. If at any of the renewals the amount of the new indebtedness had exceeded the original indebtedness, then the difference between this latter indebtedness and the first excess should be added to the first excess, but so long as the amount of the original excess was never exceeded, we do not think the excess indebtedness for which the directors are liable should be increased. The total indebtedness of Penzein and of the other debtors as well should be computed in this manner. This method of computation would result in a considerable reduction of the amount claimed by the plaintiff and for which he would be entitled to judgment.

The judgment and order appealed from are reversed, and the cause is remanded for further proceedings in conformity with this opinion.

CAMPBELL, ROBERTS, WARREN, and RUDOLPH, JJ., concur.