WILSON ET AL., RESPONDENTS, *v.* MILNER HOTELS, INC., APPELLANT.

(No. 8363.)

(Argued September 18 and deemed submitted September 22, 1944. Decided December 14, 1944.)

[154 Pac. (2d) 265.]

*Mr. P. E. Geagan,* for Appellant, submitted a brief and argued the cause orally.

426

*Messrs. J. F. Emigh, W. E. Coyle, F. X. Ibarra* and *Harlow Pease,* for Respondents, submtted a brief; *Mr. Pease* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an action for the recovery of rentals under a lease of a hotel property in the city of Butte. The property was owned by Mabel B. Wilson and Miles Romney, the plaintiffs. It consisted of a three-story hotel building with furniture and fixtures and was known as the Butte Hotel. On September 2, 1939, it was leased to the Milner Hotels Corporation of Detroit, Michigan. The lease agreement is in writing signed by both of the owners, and on behalf of the lessee by Earle R. Milner. It is on a printed form, apparently in general use by the hotel company in its business of leasing hotels. The introductory paragraph, with the typewritten insertions in italics, is as follows:

"This lease made and entered into this *second* day of *September 1939* by and between *Mabel M. Wilson* and *Miles Romney,* hereinafter called Lessor, and Milner Hotels, Inc., a Delaware Corporation, hereinafter called Lessee.

"Witnesseth:"

Then follow the ordinary provisions of lease. The term is ten years, from September 15, 1939, to September 14, 1949; rent is fixed at 20% of the income from rooms less money advanced or paid out for accommodation of guests, with minimum rent guarantee of $300 per month the first five years and $500 per month the last five years. There are special provisions governing relations between the parties, but the only such which is material in the case presented on appeal is the following provision for assigning the lease: "The lessee reserves the right to assign this lease in full to a domestic corporation to be organized within the state in which the herein described premises are located."

The name of the hotel company is printed in the place for signatures at the end of the lease, the signatory part with the written names shown in italics, being as follows:

"Witness the hands and seals of the parties hereto the day and year above written.

*Cecil Pascoe* *Mabel M. Wilson*

*H. J. Daldin* *Miles Romney*

Milner Hotels, Inc.

By *Earle R. Milner*

By ............................................"

There is an impression of the corporate seal in these words:

"Milner Hotels, Inc.,

Corporate Seal

1935

Delaware"

The plaintiffs, by their amended complaint, seek to recover past-due rent for the period from April 1, 1940, to December 4, 1940, basing their claim in a first cause of action on the express agreement to pay a specified rent, and in a second cause of action the same claim based on the reasonable rental value of the premises for the time in question. It is alleged in both counts that the lessee went into possession immediately after obtaining the lease and remained in possession until December 4, 1940; that rent for only part of that time was paid, the sum in arrears being $2,617.20, which is the amount plaintiffs sue for. The action is against Milner Hotels, Inc., as named in the lease, but does not allege the state of incorporation.

The defendant by its answer alleges that it is a Delaware corporation. It denies generally any indebtedness and any liability. It also sets up several affirmative defenses but the only such which is urged on appeal is the contention that the defendant no longer holds the lease. It is alleged in the answer that on October 10, 1939, defendant assigned the lease to Milner Hotels, Inc., a Montana corporation, and delivered possession of the leased premises to the assignee, all with the knowledge and consent of the plaintiffs, and that the defendant has not since then exercised nor had any rights under the lease, and has no liability under it.

To this answer the plaintiffs replied, denying generally the defensive matters alleged, and specially denying the assignment of the lease. And in respect to the assignment, it alleges affirmatively that the Montana corporation to which the assignment was made is in entity, substance and fact a part of the legal structure of the Delaware corporation, owned by the same stockholders and having as its officers the same persons as hold the corporate offices of the Delaware company; that it was organized to operate the Butte Hotel as part of the business of the Delaware corporation, but so as to avoid liability upon its obligations as the lessee. It alleges further that the plaintiffs, when they agreed to the provision in the.lease for its assignment, were given to understand and led to believe that an operating company, well financed and organized on a sound basis, would take over the lease; that instead thereof the Montana company has no financial basis; that it was not organized to engage in the hotel business but for the purpose only of holding possession of the leased premises for the use of the Delaware corporation; that all such acts in assignment of the lease were for the purpose and with the intent of defrauding the plaintiffs of their rights under the lease agreement.

The case was tried to a jury, resulting in verdict and judgment for the plaintiffs in the sum of $2,617.20, the total amount sued for. The case is before this court on appeal from the judgment. It was the matter of the assignment of the lease that gave rise to the controversy between the parties, and it is questions arising in the disposal of the issue thereon that are before us on the appeal.

At the opening of the trial in the court below, defendant ▮▮ moved to require plaintiffs to elect on which cause of action they would proceed, whether to seek recovery of rent under the lease agreement, or for the reasonable value of the use and occupancy of the premises during the time for which rent had not been paid. The motion was denied and exception is taken to the court's ruling as error.

On this point in regard to the pleadings, appellant contends

that the setting up of the two counts in the complaint was for the purpose of avoiding the result of the plaintiffs' consent to the assignment of the lease; that with a contract, which they knew the lessee might and had a right to avoid by its transfer, they, by double pleading in the complaint and by setting up case matter in the reply, endeavor to recover on liability outside of the lease if they cannot avail themselves of the lease agreement; that they rest a case on the contract and at the same time seek to avoid it for fraud. And all this without fraud and deceit being made an issue in pleading the case. That the new matter set up in the reply in the effort to make a case different than that set out in the complaint constitutes a departure in pleading which is not permissible, citing *Waite* v. *C. E. Shoemaker,* 50 Mont. 264, 146 Pac. 736.

The point of law in *Waite* v. *Shoemaker* referred to as bearing upon the question here raised, we find stated in the first paragraph of the syllabus to the case as follows: "Where, in an action to recover for services rendered, plaintiff in one count of his complaint declared upon a contract in writing and in another upon a *quantum meruit,* and in his reply sought to avoid the writing on the ground of fraud, he must be held to have abandoned the cause of action upon the contract, inasmuch as by the alleged misrepresentation a meeting of minds, or the formation of a contract, was prevented." The pleading in the case at bar is of quite a different character. Plaintiffs do not seek to avoid the contract. They charge fraud in the attempt by the lessee to avoid liability by a simulated assignment of the lease; they allege in the reply that the assignment pleaded by defendant in its answer, and relied on as relieving it of liability under the lease, was not bona fide and in good faith, but was merely a shifting of the lease to a dummy concern for the sole purpose of avoiding its obligations as lessee. The fraud spoken of in the reply was not in the obtaining of the lease, but in the exercise of rights granted thereby. The assent to the assignment was in the lease itself. The assent later signed when the assignment was made out was in recognition of the terms of the lease

being carried out. It was not a variance from its terms. The lessors did not thereby surrender any rights. It was an acknowledgment made in good faith and on the assumption of, and in reliance upon, a good faith performance by the lessee.

Plaintiffs by their pleading did not seek to avoid the lease but only to circumvent the defendant in its scheme to deprive them of the lessors' returns which it was the lessee's obligation to pay. And the pleading is not objectionable because of the two statements for the one recovery. "Both counts are for the same purpose, against the same defendant, concern the same subject-matter, and are for the same amount." It is well-settled law by our own decisions that "the (trial) court may, in its discretion * * * permit the same cause of action to be stated in different counts * * * to meet the exigencies of the case as presented by the evidence." (*Fitzgerald* v. *Eisenhauer*, 62 Mont. 582, 206 Pac. 685, 688.) And "when there is more or less uncertainty as to the grounds of recovery, there may be properly joined a count upon express contract and a count upon *quantum meruit.*" (*Sharp* v. *Sharp*, 66 Mont. 438, 213 Pac. 799, 800.) We see nothing in the case which would justify a holding here that there was any abuse of discretion in refusing to require an election. (*Bingham* v. *National Bank,* 105 Mont. 159, 72 Pac. (2d) 90, 113 A. L. R. 315.) The trial court's ruling on that point is sustained.

On the merits, it appeared from the evidence: The lease was obtained and executed after some negotiation, Milner Hotels being represented in the transaction by a man by the name of Daldin. It was signed in duplicate as shown in the complaint and each party had a signed copy. In regard to the provision for assignment, plaintiffs testified that there was some conversation with Mr. Daldin, and he said it would be for convenience in handling the business; that they were a big concern with some 200 hotels all over the country, strong and well financed. That the Montana corporation would in all respects be a sound, strong concern, well suited and able to handle the business. They would show their good faith by improvements

on the property and everything would be all right. When the assignment was made, written approval thereof was obtained from the lessors, they again being given to understand it was for convenience in handling the business. The assignment was made on October 10, 1939. No change in the management of the hotel took place. Mr. Daldin continued in charge. All went well for three months and rent was paid. And after that, for the months of January, February and March, 1940, rent was paid by charging back the cost of plumbing repairs paid by Milner Hotels, $671.31, deducting $200 out of each month's rent and paying $100. This settlement and payment was made and handled through local attorneys and the $100 payments were in the form of drafts from the Detroit office of the Milner Hotels concern. After that there was no payment. Mrs. Wilson wrote the Milner Hotel's office in Detroit. She received letters in reply, one dated April 29, 1940, which we copy in full to show style and representations made by the concern, as well as its own statement as to operating the hotel.

Coast to Coast

(Map)

"E. R. Milner Telephone
<br>President Cadillac 2068

Milner Hotels

General Offices

Thirty-fifth Floor David Stoff Building,

Detroit, Michigan

April 29, 1940.

Mrs. Mabel Wilson,
C/o Butte Hotel
Butte, Montana.

Re: Butte Hotel,

Butte, Montana.

Dear Mrs. Wilson:

I would like to know what kind of rental you would take for this hotel for a five or ten-year lease.

We negotiated with you some time ago and had signed an

agreement but we later found that it was entirely void because it was changed after the President of the company here had executed same. Therefore, we of course could not recognize any changes because there was actually never a direct agreement between yourself and our company. We are now merely operating a hotel for you and feel like some kind of terms should be agreed upon so we can start paying rent.

Please let me know how much rent you would expect us to pay for a five or ten-year period and what terms you would want in a lease.

Very truly yours,

Milner Hotels,

W. A. Porter.

WAP/hn

World's largest chain of medium priced hotels.''

This was followed by a letter dated May 7th, in which they again speak of the hotel, saying they are operating it without a lease, and ask that a lease be executed.

The concern carried no bank account in Butte. The money coming in was sent by draft daily to Milner Hotels, Inc., in Detroit. The annual statement of the Montana corporation filed as the law requires, and dated February 29, 1940, shows the total capital contribution by stockholders was $1,020. This report was made out in Detroit where all the officers reside, as the report shows. Milner was named President and the other officers were all from the Milner office in Detroit. No property was listed for taxation in Silver Bow County (Butte).

The Montana corporate organization was just a shell without the substance necessary to carry on the business which the lease contemplated and to give assurance of performance. And it never actually took over the business. The Delaware corporation continued in control after the paper assignment, as before, and it cannot escape its liability to those whose property it was using in the business.

This court has in very recent decisions given full expression

 to the rule permitting disregard of corporate entity where the use of corporate organization is for purpose of fraud. (*State ex rel. Monarch Fire Ins. Co.* v. *Holmes,* 113 Mont. 303, 124 Pac. (2d) 994; *Commercial Credit Co.* v. *O'Brien,* 115 Mont. 199, 146 Pac. (2d) 637.)

Where, as in the present case, the corporation whose relation to a matter is in question is under the control of a parent corporation, and they act as one in the transaction of the business, the parent organization cannot avoid liability.

The evidence was all produced by the testimony of the two plaintiff owners and witnesses produced by them. Defendant put in no evidence and made no defense case, relying wholly on criticism of plaintiffs' case. There was much objecting by defense counsel to testimony and other evidence produced, and error is specified on the court's ruling in admitting certain of it. We find nothing in its admission which was prejudicial to defendant's rights. There was objection to allowing testimony of statements made by Daldin, on the ground he had no authority to bind the corporation. He was there, the only one representing Milner Hotels, handling the lease transaction and attending to the company's business. There is nothing in the statements questioned in which Daldin assumed to exercise any authority beyond that which was necessary to the business he was handling, and those statements are competent and all material in determining what understandings there were. In talking about the provision in the lease for its assignment, the statements Daldin made are no more than the lessors would have right to assume in the absence of anything being said. He spoke of the Milner Hotels corporation as being a large and substantial concern, having hotels in all of the leading cities of the United States, and gave assurance they would meet their obligations as lessee and would be found to be a good tenant. That was the substance of his talk as related by the witnesses. It was admissible and there was no error in receiving it as evidence.

The evidence produced and admitted was competent and

applicable and there was ample proof to support the verdict. The judgment is affirmed.

ASSOCIATE JUSTICES ERICKSON and ADAIR concur.

MR. CHIEF JUSTICE JOHNSON:

I concur in the result of the foregoing opinion, although not in much that is said therein. It seems to me that the jury's verdict is amply sustained by the defendant's letters showing that notwithstanding the assignment of the lease the defendant remained in actual possession of the hotel and was therefore obligated to pay rent. I think, therefore, that it is unnecessary to consider the questions of fraud or of the disregard of corporate entity.

MR. JUSTICE MORRIS concurs in the result.