McGRATH, Respondent, *v.* DUBS, Appellant.
No. 9093.
Submitted November 17, 1952. Decided April 24, 1953.
Amended on Denial of Rehearing June 18, 1953.
257 Pac. (2d) 894.

Messrs. Hall, Alexander and Burton, Great Falls, for appellant.
Messrs. Swanberg and Swanberg, Great Falls, for respondent.
Mr. H. C. Hall and Mr. Randall Swanberg argued orally.

MR. JUSTICE ANGSTMAN:

In January 1949, Frank McGrath and Edmund Dubs and his wife, Clara Dubs, formed a corporation known as McGrath-Dubs Motors, Inc., for the purpose of selling automobiles in Great Falls. Dissention soon developed and in November of the same year they entered into a written agreement for the liquidation of the business and division of the assets. By the terms of the agreement all the assets of the corporation were turned over to defendant, Edmund Dubs, after January 5, 1950, and he agreed to liquidate the business not later than January 15, 1950. McGrath was to operate the business until January 5, 1950, he having an option to purchase it at any time before that date, but which option was never exercised.

Upon liquidation, Frank McGrath was to be paid $2,000, Clara Dubs $5,000 and Edmund Dubs $10,000, these amounts being the sums contributed by each respectively to the corporation at the time the business was started. The excess obtained upon liquidation was to be distributed fifty percent to McGrath and fifty percent to the Dubs. Defendant commenced liquidation by turning over a car to Mr. McGrath and enough cash to make up his original investment of $2,000 and sometime before the trial of this action $5,000 was returned to Mrs. Dubs.

This action was brought by Frank McGrath, but before the case was tried, Frank died and Frances McGrath, administratrix, was substituted as party plaintiff. The jury found for plaintiff

in the sum of $15,150 with interest. Defendant has appealed from the judgment entered on the verdict.

The complaint alleges that when the business was turned over to defendant Edmund Dubs for liquidation, the total assets amounted to $64,215.63 and the liabilities amounted to $15,-637.25, leaving capital and surplus of $48,578.38; that after returning to plaintiff $2,000 and $10,000 to defendant, Edmund Dubs, and $5,000 to Clara Dubs, there remained for division between Frank McGrath and defendant the sum of $31,578.38, of which Frank McGrath was entitled to one-half or $15,789.19. It is alleged that defendant after the assets were turned over to him sold the business in its entirety, but plaintiff is not informed of the purchase price of such sale; that between January 5th and January 15th, the business could have been sold and liquidated for its full value, but that defendant Edmund Dubs failed and refused to do so to plaintiff's damage in the sum of $15,789.19; that plaintiff has demanded an accounting of the proceeds of the liquidation and the payment of plaintiff's share of the proceeds but defendant has failed, neglected and refused to make any accounting and the defendant is indebted to plaintiff in the sum of $15,789.19.

Defendant filed a demurrer containing grounds both general and special. The special grounds were for uncertainty as to whether the action is one for accounting or for damages for failure to liquidate the assets for their full value and uncertain because it cannot be determined how or for what reason plaintiff is entitled to the sum of $15,789.19. The demurrer was overruled.

It is defendant's contention that the complaint contains contradictory allegations; that in one paragraph it is alleged that defendant sold the business in its entirety and has failed to account to plaintiff for his share, whereas in another paragraph it is alleged that the business could and should have been liquidated for its full value as alleged in the complaint but that defendant failed and refused to do so to plaintiff's damage in the sum of $15,789.19.

In construing the complaint attacked upon the ground of

█ uncertainty we keep in mind the well settled rule that, "a special demurrer will not lie even as to uncertain and ambiguous allegations * * * if the matters with respect to which the pleading is uncertain or ambiguous are peculiarly within the knowledge of the opposite party. * * * and, notwithstanding the allegations may not be as clear and as detailed as might be desired, a special demurrer should not be sustained if the allegations are sufficiently clear to apprise the other party of the issues which must be met." 71 C. J. S., Pleading, sec. 224, page 435.

The same rule applies in those states where uncertainty must be raised by motion to make more definite and certain. Id. sec. 481, page 995.

A motion to make more definite and certain is a discretionary matter with the court. Id. sec. 475, page 983 and 41 Am. Jur., Pleading, sec. 360, p. 537. And the same rule should obtain as to a special demurrer questioning the complaint on the ground of uncertainty.

Here it sufficiently appears from the complaint that the █ defendant had full knowledge of what he had done in in the way of liquidating the business of the corporation. The complaint discloses that plaintiff did not know just what had been done by defendant in that connection. The complaint is susceptible to the interpretation that the allegations are in the alternative, i. e., that defendant had liquidated the business in its entirety for an amount unknown to plaintiff; that it could and should have been liquidated for its full value but that defendant had failed and refused to do so and has failed to account to plaintiff for his share of the proceeds under either alternative. Since defendant knew exactly what he had done with respect to the liquidation it cannot be said that he was in any sense taken by surprise as to what issues he was called upon to meet. Modern authorities permit pleading in the alternative to meet the exigencies of the proof.

In 41 Am. Jur., Pleading, sec. 42, p. 317-318, it is said, "where █ the exact relations existing between the defendants at

the time the cause of action arose are not definitely known to anyone but themselves, and for this reason the plaintiff is doubtful about the particular facts which he can establish on the trial, he is allowed to plead alternative allegations, and a like rule applies where the pleader has no knowledge as to which of two sets of facts should be alleged, and the opposite party would be equally liable under either. Of course, an immaterial inconsistency between averments will be disregarded.'' And see Peck v. Woomack, 65 Nev. 184, 192 Pac. (2d) 874, and Saliba v. Saliba, 202 Ga. 791, 44 S. E. (2d) 744. This court has likewise sanctioned this practice. Wilson v. Milner Hotels, Inc., 116 Mont. 424, 154 Pac. (2d) 265; Fitzgerald v. Eisenhauer, 62 Mont. 582, 206 Pac. 685. Inconsistent allegations have been held to nullify each other in White v. Hagbery, 54 Mont. 593, 172 Pac. 1034; Stricklin v. Chicago, M. & St. P. Ry. Co., 59 Mont. 367, 197 Pac. 839 and Jones v. Hall, 90 Mont. 69, 300 Pac. 232. However, there was nothing in the last cited cases to indicate that plaintiff was without knowledge of the exact facts and that defendant was in possession of all the facts and circumstances and knew more about them than did plaintiff. Additionally, the allegations here are not inconsistent. The one is that the business was sold for an amount unknown to plaintiff; and the other that it could have been sold for its full value, but this defendant failed and refused to do. It was the amount of the sale price that was left uncertain, but as to that defendant knew the facts and could not have been misled.

Likewise defendant could not have been prejudiced by any uncertainty in the complaint because at the opening of the trial plaintiff upon motion of defendant elected to proceed in the trial of the action as one for breach of contract. The record in that connection shows the following:

''The Court: The question now arises whether the Court will try this case as a court case or a jury case, with questions on Findings of Fact to be submitted to the Jury; in other words, special findings.

''Mr. Hall: The defendants take the position the action is

one for accounting of the proceeds of a liquidation under a contract between the parties, and not an action for a breach of contract or an action on a contract, and if there is any question about it, we now request that the plaintiff elect upon what theory he proceeds in the case.

"Mr. Swanberg: We believe it is an action to be submitted to the Jury on a breach of contract action."

The court did not err in overruling the demurrer to the complaint.

The evidence shows that while the McGrath-Dubs Motors, Inc. was a going concern, Louis A. Lanouette, a certified public accountant, was employed by it to balance the books each month and to prepare reports for the Chrysler Company and for income tax purposes. These reports were received in evidence and furnish a principal ground for this appeal.

Defendant contends that the court erred in admitting Exhibits, 3, 4 and 5 in evidence as well as testimony of Mr. Lanouette with reference to these exhibits.

Exhibit 3 is a financial report of McGrath-Dubs Motors, Inc. as of December 31, 1949, prepared by Louis A. Lanouette.

Exhibit 4 is a tentative balance sheet of McGrath-Dubs Motors, Inc. as of December 31, 1949, before adjustments.

Exhibit 5 is a financial report of the corporation as of March 4, 1950, made by Mr. Lanouette.

Lanouette testified that he prepared Exhibit 3 from the books of the company, bank statements and from information submitted on inventories from members of the corporation. It correctly reflects the figures that appear on the corporation's books and records. Speaking of Exhibit 4 he said: "These figures are before any adjustments for inventories, and there were some other expenses to be paid in the interim between this statement and that one. This was taken off a day or two before adjusting the books. * * *

"Q. * * * would it be true that the figures on 'Exhibit 4' were those used by the company through the year as from the

inventory, and the figures on 'Exhibit 3' are figures after actual count? A. Yes.

"Q. Do each of the statements you have in your hand correctly reflect the condition of the books of McGrath-Dubs Motor Company as you found them? A. They cannot be both right because there is a variation in the inventories there.

"Q. And certain adjustments were likewise made? A. Yes.

"Q. Were they prepared by you, personally, both of those exhibits? A. They were. This first one is marked tentative balance sheet.

"Q. You were employed by McGrath-Dubs Motor Company to do that, were you? A. That is right.

"Q. Now, I would like to have you explain to the jury in a general way what an annual statement is so the figures that appear will be more understandable to them. What do you do when you make up an annual statement, what is the purpose of it? A. Well, the purpose is to reflect a true picture of the operations of the business for the year, and to make up a direct tax return; that is the income tax is based on the income reduced by expenses, and along with that we have to furnish a statement of assets and liabilities, and the purpose also is to furnish a correct statement to the Chrysler Division and to possibly any banks that may be loaning money to the organization.

"Q. In doing so do you list all assets of the corporation and all of the liabilities? A. We do.

"Q. By subtracting the liabilities from the assets what do you arrive at? A. The net worth.

"Q. Does the net worth include the capital invested by the partnership? A. It does.

"Q. What does the net worth refer to, to capital plus surplus? A. That is right.

"Q. When you arrive at that surplus, what is that? A. Well, the surplus here is earned surplus. Some times there is not any surplus, which there was not in this case, it being a new organization, there was no accumulations from the prior year so the surplus was not the net gain from that year.

"Q. Would it be correct to say it amounts to the value of the stockholders' interest over and above the amount invested as capital? A. Yes sir. * * *

"Q. Is Exhibit '3' the final accounting as you arrived at it for the purpose of income tax and submitted to the Chrysler Company? A. It is."

Exhibit 5 was made by Mr. Lanouette from the books of the company, then in charge of Mr. Dubs. He said it correctly reflected all the information that was on the books at the time the statement was made. He said he was employed by Mr. Dubs to make the statement. It showed that all liabilities of the corporation had been paid off as of March 4, 1950. It showed an item of "$26,794.56 accounts receivable, Strobel" which Mr. Lanouette testified represented a sale of the shop equipment, the office fixtures and the sale of a service car and parts and accessories to Mr. Strobel. He received his information from a sheet of paper showing the sale, handed to him by either Mr. Dubs or the bookkeeper. The witness prepared these records as accountant for the corporation and on its behalf. The price received for these assets exceeded the price at which they were carried on Exhibit 3. The price of $26,794.56 did not include the cash in the bank, accounts or notes receivable or equity in new cars listed in Exhibits 3 and 4.

Defendant objected to Exhibit 3 as being incompetent, irrelevant, immaterial, hearsay and no foundation laid for its admission. Exhibit 4 was objected to for the same reasons and for the further reason that it appeared from the witness' testimony that it is not an accurate report of the financial condition of the corporation on the date of the report or at all. Exhibit 5 was objected to for the same reasons. Mr. Lanouette pointed out that among other things Exhibit 3 showed $10,627.03 cash in the bank, whereas Exhibit 4 showed $15,409.94 in the bank and Exhibit 3 showed $231.48 accounts payable whereas Exhibit 4 showed $1,282.59 accounts payable. He explained that the reduction in the bank account was accounted for by a

salary or bonus of $2,800 and traveling expense of $600 paid to Mr. Dubs between the time the two statements were made.

During the same year, being 1949, Mr. Dubs was paid a salary of $100 per month or $1,200 and the additional $2,800 was received about the first of the year but the record does not disclose any authorization for the additional salary from the corporation.

There was likewise a discrepancy between Exhibit 3 and Exhibit 4 as to the item for used cars. Exhibit 4 carried them at $4,272.15, whereas Exhibit 3 carried them at $3,050. This was explained by Mr. Lanouette as follows: "On the tentative statement the used cars were shown at what they were taken in for; what they were allowed, and possibly some additional cost for reconditioning, whereas, on the final statement they were reduced to approximately what they considered the fair value was."

Likewise Exhibit 4 contained an item, "Liabilities, Federal Income Tax," $10,981.65, which was merely the anticipated amount, whereas Exhibit 3, the witness explained, contained the item of income tax actually paid which was $6,363.84.

Thus the discrepancies between the exhibits were fully explained. The exhibits as thus explained reflected the financial condition of the corporation at the time they were made.

For some reason Mr. Strobel who had purchased certain of the assets advised Mr. Dubs that he did not care to continue the business and so Mr. Dubs took back what remained of the assets purchased. This was in June 1950, but the assets were not returned to the McGrath-Dubs Motors, Inc., but to the Great Falls Motor Company, which was the name under which defendant was operating pursuant to the request, as he said, of the Chrysler Corporation.

Defendant relies upon State v. Ray, 88 Mont. 436, 294 Pac. 368, 371, in support of his contention that it was error to receive the Exhibits 3, 4 and 5. In that case this court said: "The rule is that, where a fact can be ascertained only by examination of voluminous records, a competent witness who

has perused the entire mass may state the net result of his examination. Wigmore on Evidence (2d Ed.) sec. 1230; Jones' Commentaries on Evidence (1st Ed.) sec. 206; State v. Olson, 75 Utah 583, 287 Pac. 181; State v. Ewert, 52 S. D. 619, 219 N. W. 817; State v. Clark, 47 Idaho 750, 278 Pac. 776; State v. Colson, 325 Mo. 510, 30 S. W. (2d) 59; Stevens [Stephens] v. United States, 9 Cir., 41 F. (2d) 440.

"But the difficulty here is that the deputy examiner was not asked regarding the result of his examination, but his written report was introduced as a substitute for oral evidence. This may not be done, particularly where, as here, the report was based, in part at least, upon affidavits. * * *

"The written report of the deputy examiner, under the circumstances here disclosed, was not admissible in evidence under any theory."

But in that case the court held it was not reversible error to have received the exhibits. On this point this court said: "The contention is also made that, under the circumstances of this case, the judgment ought not to be reversed even though the report was improperly received in evidence. It is asserted by the state that the admission of the report, if erroneous, was harmless. We think this contention must be sustained. Technical errors and exceptions which do not affect substantial rights furnish no ground for reversal."

So in this case it would have been perfectly proper for the witness Lanouette to state the net result of his examination of the records and hence he could have testified orally to everything contained in the exhibits and that being so, the admission of the exhibits, if erroneous, was harmless.

For another reason the evidence complained of was admissible.

As above noted, Lanouette was employed to do accounting for McGrath-Dubs Motors, Inc. while it was a going concern and before the disagreement developed. While McGrath was still in charge of the business Lanouette commenced making up the annual statement of the corporation for income tax purposes and for the report to stockholders and directors. He had

also made monthly statements for the year 1949 for the Chrysler Corporation, the first one on March 31st and the rest monthly thereafter. Exhibit 5 was mailed to plaintiff's counsel by counsel for defendant in response to an inquiry by plaintiff's counsel regarding the status of the liquidation proceeding.

R. C. M. 1947, sec. 93-801-2, provides: *"Proof of business records.* A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Lanouette while making the reports must be considered as the "custodian or other qualified witness" within the meaning of this statute.

The reports were sufficiently authentic, and the sources of information sufficiently identified as to satisfy defendant of their accuracy in connection with income taxes and information to stockholders and directors and the court by reason thereof was justified in concluding that the sources of information, method and time of preparation of the exhibits were such as to justify their admission under sec. 93-801-2. Laws practically identical with sec. 93-801-2 have received a liberal construction to carry out the legislative intent. Loper v. Morrison, Cal. App., 134 Pac. (2d) 311, affirmed 23 Cal. (2d) 600, 145 Pac. (2d) 1; Doyle v. Chief Oil Co., 64 Cal. App. (2d) 284, 148 Pac. (2d) 915; Douglas Creditors Ass'n v. Padelford, 181 Or. 345, 182 Pac. (2d) 390.

Defendant contends that the court erred in denying his motion for a directed verdict. He points out that at the opening of the trial, plaintiff elected to proceed on the theory of a breach of contract and that the allegation is that the liquidation was to have been completed by January 15, 1950, and that it could and should have been liquidated for its full value, as alleged,

but defendant failed and refused to do so. He contends there was no proof in support of these allegations.

Defendant's contention overlooks the fact that the complaint also alleges a completion of the liquidation and failure to pay to McGrath his share of the proceeds. The record presents ample evidence making a case for the jury that the liquidation had been completed but the obligation to account to McGrath for his share of the proceeds was not complied with. Defendant asserts that the liquidation was not completed and could not be because of the pendency of an action brought by Enquist and Roll against defendant and the corporation. The record shows that according to the books of the corporation there were no outstanding liabilities of the corporation at the time this action was commenced. The Enquist and Roll action was brought against defendant and the corporation and was pending when this action was commenced, but the evidence supports the conclusion that the obligation therein sought to be enforced was an obligation of Dubs and not of the corporation. And before this action was tried that action had been dismissed as to the McGrath-Dubs Motors, Inc. and continued against defendant Dubs as the sole defendant.

As to the damages sustained by plaintiff the evidence was amply sufficient to require submission of the question to the jury. The showing was sufficiently impressive to induce defendant at the trial to offer to tender in court the sum of $9,-077.09 as due to plaintiff. In arriving at the sum of $9,077.09, defendant was taking the amount of cash on hand on March 6, 1950, from which he subtracted the sum of $416.71 additional income tax paid for 1949; $450 for settling the Enquist-Roll action; $255 for attorney's fees and expenses and his advance to the corporation in the sum of $10,000. The balance he offered to divide with plaintiff pursuant to the contract. But this tender failed to consider the sum of $3,400 taken by defendant for salary and expenses and other items which the evidence shows disappeared during the liquidation.

The court properly denied the motion for directed verdict.

Defendant complains that the court gave an instruction over his objection in the language of sec. 17-204, R. C. M. 1947, dealing with the subject of interest. The particular objection urged was that the instruction permitted the recovery of interest without giving the jury any instruction as to when the interest may start to run, but permitted the jury to speculate and conjecture on that subject.

The jury allowed interest from and after June 21, 1950, which is the date the action was commenced. Defendant was not prejudiced by the giving of the instruction.

Defendant complains of the court's refusal to give his offered instructions 3 and 4. These offered instructions were to the effect that plaintiff, by insisting that defendant proceed with the contract of November 8, 1949, after the date for the performance thereof had expired, he waived the provision making time of the essence of the contract and that plaintiff could not claim a breach of the contract thereafter by reason of delay in performance until making a demand upon defendant to perform and allowing a reasonable time to comply with the demand.

These instructions would have tended to confuse the jury rather than aid in proper disposition of the case. They assumed that delay in performance of liquidation was the gist of plaintiff's right. The evidence tends to show that the liquidation was complete except as to the important matter of turning over to plaintiff the share rightfully due to Frank P. McGrath. The court did not err in refusing to give the offered instruction.

Complaint is made of the court's refusal to give defendant's offered instruction 6.

By this offered instruction, the burden of proof was placed on plaintiff to show that between January 5, 1950, and January 15, 1950, defendant could and should have liquidated the assets for their full value as set forth in plaintiff's complaint and on failure to sustain that burden the verdict should be for defendant. This offered instruction was properly refused because it ignores other grounds of recovery which makes such an instruction improper and erroneous.

Defendant assigns error in the court's refusal to give his offered instructions 7 and 9.

These offered instructions in substance were to advise the jury that no part of the assets of a corporation representing its outstanding capital stock may be distributed until all debts and liabilities against the corporation are paid and that the disposal of assets should not be made in a manner which might impair the claims of creditors.

Other instructions made it plain that all liabilities of the corporation should be paid as a part of the liquidation and that liabilities included contingent liabilities. The instructions given also defined contingent liabilities. There was no occasion to further instruct the jury on the subject.

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE FREEBOURN, concurs.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur in the result but not with all that is said in the foregoing opinion.

MR. JUSTICE ANDERSON not being a member of the court at the time of oral arguments took no part in the decision.